UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | | |
|---|---|---|
| APOLLO MEDICAL GROUP OF LAKE CHARLES LLC, | : | CIV. NO. 23-_____ |
| | : | |
| Plaintiff, | : | |
| | : | |
| VERSUS | : | JUDGE _____ |
| | : | |
| JOINT REPLACEMENT CENTER OF LOUISIANA, L.L.C., and ELISE LOFTON. | : | |
| | : | MAGISTRATE _____ |
| Defendants. | : | |

**VERIFIED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

Plaintiff, Apollo Medical Group of Lake Charles LLC ("Apollo"), respectfully files this *Verified Complaint for Damages and Injunctive Relief* based on contractual violations and unfair trade practices that have harmed Apollo and threatened to cause it further irreparable injuries.

**NATURE OF THE CASE**

1. Apollo was founded to meet the increasing need for quality anesthesia and operating room management within and around Lake Charles, Louisiana. The operating room is too often not used fully, and Apollo's philosophy is that, in these changing times, costs can be minimized and profits increased by offering tailor-made anesthesia services and personal attention to the needs of its client's operating rooms.

2. Apollo is led by anesthesiologists who have not only worked with high-caliber surgeons for over two decades but who have also served as hospital leaders in optimizing efficiency and quality in the operating room. With proper anesthesia management and staffing to fit the particular needs of the facility and surgeons, Apollo helps position its clients' facilities for continued growth and success.

3. Apollo's business model is to contract with clients that own facilities with operating rooms and have corresponding anesthesia needs—that is, through these contracts, Apollo will provide clients with anesthesiologists and nurse anesthetists to optimize the delivery of surgical care, expedite recovery, and minimize post-surgical complications.

4. Apollo protects its interest and talent-assets through a "No Employment" provision in its client contracts; specifically, Apollo's clients contractually agree that, during the contract's term (and for a one-year period after the contract ends), the clients will not "employ, hire or otherwise engage" any of the anesthesiologists and nurse anesthetists that Apollo deploys to the client's facilities.

5. One such contract was with Defendant, Joint Replacement Center of Louisiana, L.L.C. ("JRCL"). Apollo contractually agreed to provide anesthesiologists and nurse anesthetists to JRCL's facility, and, in return, JRCL agreed to refrain from hiring any such individuals during the term of the agreement and for a period of one year after it ended.

6. Further, the agreement also called for Apollo to provide an anesthesiologist to act as the "Director of Anesthesia" at JRCL's facility, and to state the obvious, JRCL contractually agreed that it could not hire away this anesthesiologist during the restricted timeframe. The "Director of Anesthesia" was Defendant Elise Lofton ("Dr. Lofton"), and Apollo put its faith and trust in Dr. Lofton to perform duties commensurate with that position in a manner that benefited Apollo and protected its interest.

7. JRCL, however, violated its contractual obligation after collaborating with Dr. Lofton on how best to do so.

8. On October 30, 2023, JRCL notified Apollo that it was unexpectedly terminating the agreement, and then, on November 3, 2023, Dr. Lofton notified Apollo that she was terminating

her contract with Apollo. Since these notices, Apollo has learned that JRCL is retaining the services of Dr. Lofton in violation of JRCL contractual obligation. And, on information and belief, before these notices were sent to Apollo, JRCL and Dr. Lofton had discussed, and ultimately agreed, to essentially cut Apollo out of the commercial transaction it had secured with JRCL, with further plans to retain the services of other anesthesiologists and nurse anesthetists that Apollo had provided to JRCL under the terms of their agreement.

9. JRCL and Dr. Lofton's disregard for fair business practices has damaged Apollo and—as JRCL acknowledged in its contract with Apollo—is causing irreparable harm. If JRCL is not immediately enjoined, Apollo will face the continued threat of irreparable harm, as JRCL will continue to target and poach the fundamental core of Apollo's business—namely its anesthesiologists and nurse anesthetists.

**PARTIES**

10. Plaintiff, Apollo Medical Group of Lake Charles LLC, is a limited liability company, whose members are not citizens of Louisiana.

11. Defendant, Joint Replacement Center of Louisiana, L.L.C., is a limited liability company whose members are citizens of Louisiana.

12. Defendant, Dr. Elise Lofton, is a citizen of Louisiana and lives and works in Lake Charles, Louisiana.

**JURISDICTION AND VENUE**

13. The Court has subject matter jurisdiction over this matter under 28 U.S.C. § 1332, as Apollo is completely diverse from JRCL and Dr. Lofton, and the amount in controversy exceeds $75,000.

14. The Court may exercise personal jurisdiction over JRCL because its principal place of business is in the State of Louisiana, it is licensed to do business in Louisiana, and its registered office is within the Western District of Louisiana. The Court may exercise personal jurisdiction over Dr. Lofton because she is domiciled in, and is a citizen of, the State of Louisiana. Additionally, these causes of action arise specifically out of Dr. Lofton's contacts within the State of Louisiana.

15. Venue is proper in the Western District of Louisiana under 28 U.S.C. § 1391, as a substantial part of the events giving rise to these claims occurred in this district.

## FACTUAL BACKGROUND

### *Apollo's Business Model and Protections*

16. Apollo identified an opportunity within the medical field. There was an increasing need for quality anesthesia and operating room management. The operating room was too often not used fully, which Apollo seeks to address through its belief that costs can be minimized and profits increased by offering tailor-made anesthesia services and personal attention to the needs of its client's operating rooms.

17. Apollo is led by anesthesiologists who have not only worked with high-caliber surgeons for over two decades but who have also served as hospital leaders in optimizing efficiency and quality in the operating room. With proper anesthesia management and staffing to fit the particular needs of the facility and surgeons, Apollo helps position its clients' facilities for continued growth and success.

18. Apollo's business model is to contract with clients that own facilities with operating rooms and anesthesia needs—that is, through these contracts, Apollo will provide clients with

4

anesthesiologists and nurse anesthetists to optimize the delivery of surgical care, expedite recovery, and minimize post-surgical complications.

19. One of the most critical components of Apollo's business is its talent-assets—*i.e.*, the anesthesiologists and nurse anesthetists whom Apollo has under contract.

20. Apollo protects its interest and talent-assets by insisting that the contracts with its clients include a "No Employment" provision. Specifically, Apollo requires its clients to contractually agree that, during the contract's term (and for at least a one-year period after the contract ends), the clients will not "employ, hire or otherwise engage" any of the anesthesiologists and nurse anesthetists that Apollo deploys to the client's facilities.

21. Further, to clarify this provision's importance in regard to protecting Apollo's interests, the clients contractually agree and acknowledge that a violation of this obligation "would cause irreparable harm" to Apollo, that a "remedy at law for any violation or threatened violation thereof would be inadequate," and that Apollo "shall be entitled to temporary and permanent injunctive relief or other equitable relief without the necessity of proving actual damages."

### *Apollo Enters into Business Relationship with JRCL*

22. One of Apollo's business relationships in the Lake Charles area was with JRCL.

23. On or around September 7, 2022, Apollo and JRCL entered the "Anesthesia Services Agreement" (the "Agreement").

24. JRCL owns and operates a facility in Lake Charles, Louisiana (the "Facility") that provides ambulatory surgical services, which requires the provision of anesthesia services.

25. JRCL determined that it was "in the best interest of its patients to obtain professional anesthesia services on an exclusive contract basis" because such an arrangement would: "(1) facilitate the provision of services at the Facility; (2) assure consistency of services,

quality control and safety of patients; (3) assure prompt availability of services, thereby simplifying the scheduling of patients; (4) promote accountability and cost containment; and (5) facilitate long-range planning."

26. JRCL turned to Apollo, who (the Agreement makes clear) "employees or otherwise contracts with duly qualified physicians, who are licensed to practice medicine in the State of Louisiana . . . and board certified in anesthesiology ('Physicians'), and certified registered nurse anesthetists ('CRNAs')(collectively 'Practitioners')."

27. Through the Agreement, Apollo provided various anesthesiology services and operating room management services at JRCL's Facility through the anesthesiologists and nurse anesthetists that Apollo provided. Specifically, the Agreement called for Apollo to "develop a core group of Physicians and anesthesia providers," from which Apollo "shall schedule at least one (1) Physician that will represent [Apollo] on a daily basis at the Facility, to ensure consistent leadership and contact for the surgeons and administration at the Facility."

28. Further, the Agreement required that Apollo "appoint a Physician to act as the director of anesthesia at the Facility (the 'Director')." This was an important position and material term of the Agreement, as the Director of Anesthesia was required to "be available to consult with the Medical Staff and all clinical, nursing, and administrative personnel at the Facility regarding the provision of Services at the Facility." Additionally, the Director "shall be accountable to the Administrator for the performance of the Director's duties, and for the performance of [Apollo's] Practitioners who render the Services under this Agreement."

29. On or about November 16, 2022, Apollo appointed Dr. Lofton to be the Director of Anesthesia at the Facility.

### *JRCL's Contractual Obligations*

30. Among JRCL's contractual obligation under the Agreement, JRCL was required to refrain from retaining or engaging any anesthesiologist or nurse anesthetist whom Apollo deployed to the Facility.

31. Specifically, Section 10.6 of the Agreements states:

> **No Employment**. The parties covenant that during the Term of this Agreement, and for a period of one (1) year following the expiration or termination of this Agreement for any reason, neither party nor any of its subsidiaries, parents or other affiliates (collectively, "Affiliates") will directly or indirectly unless consent is obtained from the other party: (a) employ, hire or otherwise engage any individual that has been employed or under contract with the other party, including any Practitioner (a "Protected Person"); or (ii) solicit pursue or divert (or attempt to solicit, pursue or divert) any Protected Person, or otherwise encourage any Protected Person to leave the employment or contractual relationship with the other party.

JRCL further acknowledged through this provision that a violation would cause irreparable harm and entitle Apollo to injunctive relief:

> Each party agrees and acknowledges that violation of any of the covenants set forth in this Section 10.6 would cause irreparable injury to the non-violating party, and that the remedy at law for any violation or threatened violation thereof would be inadequate, and that the non-violating party shall be entitled to temporary and permanent injunctive relief or other equitable relief without the necessity of proving actual damages.

32. Further, JRCL also promised to compensate Apollo for providing the anesthesiologist and nurse anesthetists according to a negotiated, monthly revenue guarantee, which is set forth in Exhibit B to the Agreement.

*JRCL Violates the Agreement through an Unfair Trade Practice with Dr. Lofton*

33.   On October 31, 2023, Apollo received a formal notice from JRCL, indicating that it was terminating the Agreement. In response, Apollo notified JRCL that its last day of providing anesthesiologist and nurse anesthetists to the Facility would be November 30, 2023.

34.   It became clear, however, that JRCL decided to cut Apollo out of the commercial arrangement yet retain the anesthesiologist and nurse anesthetists that Apollo had provided to the Facility.

35.   For instance, just a few days after JRCL sent the formal notice, Apollo received a resignation notice from Dr. Lofton, who made it clear that she had every intention of working at the Facility for JRCL. She also indicated that the other anesthesiologists and nurse anesthetists that Apollo had provided to the Facility would continue to work at the Facility as well.

36.   This a direct violation of the "No Employment" clause in the Agreement, and this is the exact scenario the "No Employment" clause in the Agreement is intended to prevent.

37.   Further, upon information and belief (especially considering the timing of Dr. Lofton's resignation notice and her response about continuing to work at JRCL), it is clear that Dr. Lofton was integrally involved in JRCL's decision to terminate the agreement and retain the anesthesiology team that Apollo had provided — at a time when Apollo had placed its trust in her to fulfill her duties as the "Director of Anesthesia" in charge of the team that Apollo was providing.

38.   Essentially, JRCL and Dr. Lofton ensured that Apollo would be cut out of the commercial arrangement. According to their calculus, JRCL would no longer be required to pay the monthly revenue guarantee to Apollo, and JRCL could still retain the benefit of Apollo's anesthesiology services by retaining the "Director of Anesthesia" (Dr. Lofton) and the team that she managed. Dr. Lofton would continue in her role, likely at a higher rate of pay. The only party

harmed from the scheme was Apollo—and, as JRCL agreed and acknowledged, Apollo is suffering the threat of continued irreparable harm.

## **CAUSES OF ACTION**

### COUNT 1
### *Breach of Contract*
### **(Against JRCL)**

39. Apollo repeats and re-alleges each of the allegations of the preceding paragraphs as if fully stated here.

40. Apollo and JRCL entered into the Agreement, which set forth their respective obligations.

41. There was a meeting of the minds on all terms, as evidenced by the execution of the Agreement by the Administrator of JRCL and the Managing Member of Apollo.

42. As set forth in the "No Employment" provision of the Agreement, JRCL was contractually prohibited from employing or otherwise engaging (or attempting to do so) any of the anesthesiologists and nurse anesthetists that Apollo provided to JRCL.

43. JRCL violated this provision by attempting to and in fact engaging Dr. Lofton and others to join JRCL and end their relationships with Apollo.

44. Apollo has suffered damages because of JRCL's contractual violations, including the continued threat of irreparable harm.

### COUNT 2
### *Violation of the Louisiana Unfair Trade Practices Act*
### **(Against All Defendants)**

45. Apollo repeats and re-alleges each of the allegations of the preceding paragraphs as if fully stated here.

#101842662v3

46. LUTPA prohibits unfair trade practices, which involve some element of fraud, misrepresentation, deception, or other unethical conduct.

47. Defendants have engaged in false, misleading, and deceptive practices by planning and then executing their scheme to cut Apollo out of its commercial transaction with JRCL, yet retaining all of the benefits for themselves.

48. This is especially true given Dr. Lofton's position. She was the highest-ranking person ("Director of Anesthesia") and leader of Apollo's team at the Facility. Essentially, Apollo entrusted her to be the face of Apollo and to represent its interests fully. However, Dr. Lofton abused this position of trust and ensured that JRCL could follow through with a scheme to cut Apollo out.

49. Defendants' conduct constitutes unfair trade practices under LUTPA, as such conduct offends established public policy and is immoral, unethical, oppressive, unscrupulous, a breach of fiduciary duty, and substantially injurious.

50. Notice of this Complaint will be sent to the Attorney General pursuant to La. Rev. Stat. 51:1409(B) immediately upon filing.

51. Apollo has been damaged in the form of lost profits, diminution of goodwill, and loss of talent-assets a result of Defendants concerted, unlawful actions. Apollo will be entitled to treble damages under La. Rev. Stat. 51:1409 for any continued violations of LUTPA, as well as attorneys' fees.

### COUNT 3
*Civil Conspiracy*
**(Against All Defendants)**

52. Apollo repeats and re-alleges each of the allegations of the preceding paragraphs as if fully stated here.

#101842662v3

53. Dr. Lofton exploited her position of trust and duty of loyalty by working to ensure that JRCL could remove Apollo from the commercial arrangement and still enjoy all the benefits that commercial arrangement afforded.

54. JRCL was fully aware of Dr. Lofton's actions and the duty of loyalty she owed to Apollo, yet it nevertheless aided, abetted, and encouraged her misconduct with the specific intent of harming Apollo and benefiting themselves.

55. Thus, JRCL and Dr. Lofton have conspired to commit unfair trade practice (*i.e.*, the underlying business torts). Defendants are liable for conspiracy to intentionally and unlawfully harm Apollo.

56. Pursuant to La. Civil Code art. 2324(A), Defendants are solidarily liable for all damages caused by these "intentional and willful" acts of conspiracy.

## COUNT 4
*Breach of Duty of Loyalty*
**(Against Dr. Lofton)**

57. Apollo repeats and re-alleges each of the allegations of the preceding paragraphs as if fully stated here.

58. Apollo entrusted Dr. Lofton with significant duties at the Facility: she was the Director of Anesthesia, who was not only responsible for managing all the other anesthesiologists and nurse anesthetists that Apollo provided to the Facility, but she also was entrusted to be Apollo's representative at the Facility. She owed fiduciary duties to Apollo, including a duty of loyalty and fair dealing.

59. Upon information and belief, Dr. Lofton violated these duties when she began self-dealing by working with JRCL to terminate its relationship with Apollo yet still retain her position at the Facility and other medical professionals provided to it by Apollo.

60.     Dr. Lofton knowingly and intentionally, with the intent to benefit herself and JRCL at Apollo's expense, breached her fiduciary duty to Apollo, and Apollo has sustained significant damages because of her actions.

61.     Accordingly, Apollo is entitled to damages from Dr. Lofton's breach of her fiduciary duty to Apollo.

## PRAYER FOR RELIEF

For these reasons, Apollo, respectfully requests JRCL and Dr. Lofton be cited to appear and answer, and Apollo respectfully requests that the Court enter a judgment against the Defendants awarding money damages and all other relief to which Apollo is entitled in contract, law, and equity, including but not limited to:

1. Entry of a temporary restraining order prohibiting JRCL from employing Dr. Lofton and any other anesthesiologists and nurse anesthetists that Apollo supplied to the Facility;

2. After due proceedings conclude, entry of a preliminary injunction prohibiting JRCL from employing Dr. Lofton and any other anesthesiologists and nurse anesthetists that Apollo supplied to the Facility until the trial on the merits or the "No Employment" provision expires (whichever comes later); and

3. After due proceedings conclude, entry of a permanent injunction, an award of damages based on all the claims stated herein (actual, compensatory, exemplary, and punitive), and other such damages as provided by applicable statute, common law, or the Agreement (or any other agreement) between the parties, including attorneys' fees, expert fees, and costs. The permanent injunction shall prohibit JRCL from employing Dr. Lofton and any other anesthesiologists and nurse anesthetists that Apollo supplied to the Facility until the "No Employment" provision expires.

Respectfully submitted:

*/s/ Joseph Lavigne*
Joseph F. Lavigne (La. Bar No. 28119)
P.J. Kee (La. Bar No. 34860)
JONES WALKER, LLP
201 St. Charles Avenue - 50th Floor
New Orleans, Louisiana 70170-5100
Telephone: (504) 582-8610
Facsimile: (504) 589-8610
Email: jlavigne@joneswalker.com
Email: pkee@joneswalker.com

***Counsel for Apollo Medical Group of Lake Charles LLC***